UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

GENEVIEVE M. PAUSER,

    Petitioner,

  v.                                                                          Case No. 05-C-0816

ANA BOATWRIGHT,

    Respondent.
_____

## ORDER

Petitioner Genevieve M. Pauser ("Pauser") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a January 15, 2002 judgment convicting her as a party to first-degree intentional homicide, armed burglary, and armed robbery. Pauser sets forth three grounds for relief: (1) the jury instructions on the first-degree intentional homicide count were erroneous and confusing, violating her right to due process; (2) the evidence was insufficient to support a conviction for first-degree intentional homicide as a party to a crime; and (3) her constitutional right to present witnesses in her defense was violated when the trial court excluded a defense witness due to discovery violations. For the reasons stated below, the court denies the habeas petition.

## BACKGROUND

The Wisconsin Court of Appeals summarized the background of this case:

¶ 2 The State charged Pauser in connection with the death of Kyle Hachmeister. At her jury trial, the State presented testimony that Pauser and three others conspired to rob Hachmeister, whom they knew as a marijuana dealer who carried cash. After several days

developing various robbery plans, Pauser and her accomplices drove to Hachmeister's home late at night. She remained in the car with Lindsey Kopp, while Jeremy Greene and Corey Ellis broke into the home and entered Hachmeister's bedroom. There, they encountered Hachmeister sleeping, and in the course of the robbery Hachmeister received seven stab wounds, and later died.

¶ 3 The State tried Pauser and Greene together. Both Ellis and Kopp testified against them pursuant to plea bargains. Ellis and Kopp testified that Pauser helped plan the robbery and that Pauser knew that the plan included using a knife to induce Hachmeister's cooperation and using physical force if he did not cooperate. Both testified that Pauser accompanied them, and Greene, to Hachmeister's house. Both testified that they were surprised that Greene stabbed Hachmeister.

¶ 4 Various witnesses testified to specific acts Pauser did in furtherance of the robbery conspiracy. Two witnesses testified that Pauser called Hachmeister the night before the murder to try to set up a marijuana buy, the inference being that Pauser was actually trying to set Hachmeister up for the robbery. Pauser sought to introduce testimony from another witness who was also present when Hachmeister received the call, who was prepared to testify that Hachmeister identified "Lindsey," presumably Lindsey Kopp, as the caller. However, the court granted the State's motion to exclude the testimony because the defense had failed to identify him timely as a witness.

¶ 5 Other evidence against Pauser included testimony about inculpatory statements she made during phone calls placed from jail, after her arrest. Additionally, a police officer testified that Pauser knew facts about the murder that had not been released to the public. Pauser testified for herself, denying that she helped plan the robbery or that she was with the others at Hachmeister's house.

¶ 6 At the close of evidence, the trial court's jury instructions included the following:
Before you may find Ms. Pauser guilty of first-degree intentional homicide, you must be satisfied beyond a reasonable doubt that Ms. Pauser intentionally aided and abetted or joined in a conspiracy to commit the crime of armed robbery or armed burglary, that first-degree intentional homicide was committed, and that under the circumstances, first-degree intentional homicide was a natural and probable consequence of arme
. . . .
A crime is a natural and probable consequence of another crime if, in the light of ordinary experience, it was a result to be expected, not an

> extraordinary or surprising result. The probability that one crime would result from another should be judged by the facts and circumstances known to Ms. Pauser at the time the events occurred. If Ms. Pauser knew, or if a reason--or if a reasonable person in Ms. Pauser's position would have known, that the crime of first-degree intentional homicide was likely to result from the commission of armed robbery or armed burglary, then you may find that first-degree intentional homicide was a natural and probable consequence of the armed robbery or the armed burglary.
>
> The jury found Greene guilty of first-degree intentional homicide and Pauser guilty as an aider and abettor of that crime.

*State of Wisconsin v. Pauser*, 680 N.W.2d 832, ¶¶ 2-6 (Wis. Ct. App. Apr. 15, 2004).

In April 2002, the petitioner was sentenced to life imprisonment with parole eligibility after serving 23 years of imprisonment. (Petr.'s Br. Ex. A.)

Pauser appealed the judgment of conviction on the following grounds: 1) the evidence was insufficient to support a conviction on the first-degree intentional homicide count; 2) the jury instructions on the first-degree intentional homicide count were erroneous and confusing; and 3) the trial court erred by excluding a defense witness for what it concluded was a discovery violation. The Wisconsin Court of Appeals affirmed the judgment, and the Wisconsin Supreme Court denied a petition for review on August 2, 2004.

Rejecting Pauser's argument that the jury instructions were erroneous and confusing, the Wisconsin Court of Appeals stated:

> ¶ 8 Pauser next contends that the jury instructions quoted above were erroneous and confusing. She concedes that she made no proper objection, but seeks reversal in the interest of justice, under Wis. Stat. § 752.35 (2001- 02). However, either on direct review of the issue or under the interest of justice standard the result is the same. The instructions were neither confusing nor erroneous. The State charged Pauser as an aider and abettor, and the instruction clearly and accurately set forth the law applicable to determining the guilt of an

aider and abettor. See Wis JI-- Criminal 406 (1994); *State v. Asfoor*, 75 Wis. 2d 411, 427-32, 249 N.W.2d 529 (1977).

*Id.* ¶ 8 (footnote omitted).

Rejecting Pauser's argument that the evidence was insufficient to support a conviction on the first-degree intentional homicide count, the Wisconsin Court of Appeals stated:

> ¶ 7 Pauser first asserts that the evidence was insufficient to find her guilty as a party to the homicide. Specifically, she argues that the State produced no evidence showing that she had any reason to suspect that Greene would use the knife to stab Hachmeister to death. Consequently, it could not have been a natural and probable result to one in her shoes because it was, by all accounts, an unexpected and surprising result to all three of Greene's accomplices. We disagree. There was ample testimony that Pauser knew that the plan included physical force, if necessary, and knew that Greene was going into the home armed with a large hunting knife. It was the jury's prerogative to believe that evidence. *See Whitaker v. State*, 83 Wis. 2d 368, 377, 265 N.W.2d 575 (1978). If believed, it allowed the jury to find beyond a reasonable doubt that a reasonable person in Pauser's position would have known that Hachmeister's death was a natural and probable consequence of the late night home invasion and forcible robbery by two men ready to use force, at least one of whom carried a dangerous weapon. We will reverse a jury's verdict on criminal charges only if the evidence, viewed most favorable to the State, is so lacking in probative value and force that no trier of fact, acting reasonable, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Such is not the case here.

*Id.* ¶ 7 (footnote omitted).

Rejecting Pauser's argument that the trial court erred by excluding a defense witness for what it concluded was a discovery violation, the Wisconsin Court of Appeals stated:

> ¶ 9 Finally, Pauser contends that the trial court erred by excluding her witness for what it concluded was a discovery violation. However, we need not determine whether the trial court properly excluded the

> witness because the error, if any occurred, was harmless. There was extensive evidence that Pauser actively participated in planning and carrying out the robbery and committed several specific acts in furtherance of the conspiracy. Even if the jury had found her witness more credible than the State's two witnesses, and concluded that Kopp called Hachmeister the day before he died, there would have been no affect on the verdict. Excluding the witness was therefore harmless. *See State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (concluding error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.") (citation omitted).

*Id.* ¶ 9.

On July 29, 2005, Pauser filed a federal petition for a writ of habeas corpus raising the same three issues that she raised in state court.

## ANALYSIS

A petitioner must show that the state court's adjudication of the claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000), or that the decision was premised on an unreasonable determination of facts, *see* 28 U.S.C. § 2254(d)(2). A state court decision must be more than incorrect from the point of view of the federal court; it must be "unreasonable," which means the decision lies well outside the boundaries of permissible differences of opinion. *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

The state court's rejection of the merits of the petitioner's arguments is not an unreasonable application of clearly established federal law.

First, the petitioner argues that the jury instructions were erroneous and confusing. The petitioner argues that "the patterned jury instruction was changed to reduce the state's burden of proof of Hachmeister's murder being a 'practically certain' result of Pauser's conduct to a 'natural and probable' result of Pauser's conduct." (Petr.'s Br. 30.) Unfortunately, the petitioner does not identify "the patterned jury instruction" nor does the petitioner cite any legal support for the appropriate "burden of proof." (*See id.*)

The petitioner was charged with being a party to the crime of first-degree homicide. The jury was instructed that it could find the petitioner guilty only if it is satisfied beyond a reasonable doubt that: 1) the petitioner intentionally aided and abetted or joined in a conspiracy to commit the crime of armed robbery or armed burglary; 2) first-degree intentional homicide was committed; and 3) under the circumstances, first-degree intentional homicide was a natural and probable consequence of armed robbery or armed burglary. (Respt.'s Br. Ex. P at 56.)

This instruction is not erroneous. The instruction and its "natural and probable" language was taken directly from Wisconsin Jury Instruction 406. See Wis. JI-Criminal 406. Contrary to the petitioner's argument, the trial court did not improperly alter a patterned jury instruction. The petitioner was charged with and convicted of first-degree murder under Wisconsin's "party to a crime" statute, which makes an aider and abettor or a conspirator liable not only for the crimes that he

agreed to assist with or participate in but also for any other crime that was the "natural and probable" consequence of the crime that he aided an accomplice to commit or that he conspired to commit. Wis. Stat. § 939.05(2)(c); *Perry v. McCaughtry*, 308 F.3d 682, 693 (7th Cir. 2002) (Posner, J., dissenting). The State was not required to prove that first-degree homicide was a "practically certain" consequence of armed robbery or armed burglary. *See* Wis. JI-Criminal 406; *State v. Glenn*, 545 N.W.2d 230, 235-36 (1996); *State v. Ivy*, 350 N.W.2d 622, 626 (1984) ("proof of intent is not required for conviction of the different offense if the offense was the natural and probable consequence of the intended crime to which the defendant was a party"); *Piaskowski v. Bett*, 256 F.3d 687, 694 (7th Cir. 2001) ("under Wisconsin law, a conspirator is responsible for any crime committed as a natural and probable consequence of the intended crime").[1]

Second, the petitioner argues that the evidence was insufficient to support a conviction on the first-degree intentional homicide count because a rational trier of fact could not have been satisfied beyond a reasonable doubt that first-degree intentional homicide was a natural and probable consequence of armed robbery. The petitioner argues that neither she nor her co-conspirators expected Greene to kill Hachmeister. (Petr.'s Br. 30.)

---

[1] To demonstrate that first-degree intentional homicide was committed, the State was required to prove that Greene, Pauser's co-conspirator, had "the mental purpose to take the life of another human being or was aware that his conduct was *practically certain* to cause the death of another human being." Wis. JI-Criminal 1010 (emphasis added); (see Respt.'s Br. Ex. P at 53-54.) Pauser does not argue that Greene lacked the intent to kill Hachmeister. She only argues that the same standard of intent should apply to her, but as the court has already noted, that is not the law. *See Piaskowski*, 256 F.3d at 694*; Ivy*, 350 N.W.2d at 626.

A jury is permitted to infer that the murder of a robbery victim is a natural and probable consequence of an armed robbery. *See State v. Balistreri*, 317 N.W.2d 493, 501-03 (1982); *State v. Asfoor*, 249 N.W.2d 529, 537-38 (1977); *State v. Cydzik*, 211 N.W.2d 421, 429-30 (1973); *see also Perry v. McCaughtry*, 308 F.3d at 697 (Posner, J., dissenting) (*"Balistreri* and *Asfoor* . . . hold merely that a jury is permitted--not required--to infer that the murder of a robbery victim is a natural and probable consequence of an armed robbery."); Wis. JI-Criminal 406 (including, as an example, an instruction regarding "first-degree intentional homicide as the natural and probable consequence of armed robbery"). It is for the jury to decide what is "natural and probable." *State v. Ivy*, 350 N.W.2d at 628. The jury must make this determination after hearing evidence concerning the circumstances of the robbery. *Briggs v. State*, 251 N.W.2d 12, 20 (1977). "Whether . . . death [is] a natural and probable consequence of armed robbery is a question on which different juries might give different answers without being thought lawless." *Perry v. McCaughtry*, 308 F.3d at 696 (Posner, J., dissenting) (considering the percentage of robberies and armed robberies that result in death).

In this case, a reasonable jury could conclude that first-degree intentional homicide is a natural and probable consequence of armed robbery or armed burglary. The jury was correctly instructed that

> A crime is a natural and probable consequence of another crime if, in the light of ordinary experience, it was a result to be expected, not an extraordinary or surprising result. The probability that one crime would result from another should be judged by the facts and circumstances known to Ms. Pauser at the time the events occurred. If Ms. Pauser knew, or if a reasonable person in Ms. Pauser's position would have

- 8 -
Case 2:05-cv-00816-JPS   Filed 06/27/06   Page 8 of 15   Document 17

> known, that the crime of first-degree intentional homicide was likely to result from the commission of armed robbery or armed burglary, then you may find that first-degree intentional homicide was a natural and probable consequence of the armed robbery or armed burglary.

(Respt.'s Br. Ex. P at 50-51); *see also* Wis. JI-Criminal 406. As the instruction indicates, the proper test is not whether the petitioner or her co-actors were surprised that Greene stabbed the victim; it is whether a reasonable person in the petitioner's position would have known that first-degree intentional homicide was likely to result from the armed robbery. Kopp testified that Pauser knew that Ellis and Greene were going to bring a knife and mace to rob Hachmeister. (Respt.'s Br. Ex. S at 67, 72, 149-50.) Kopp testified that Pauser knew that the plan to rob Hachmeister involved physical force if necessary. (Respt.'s Br. Ex. S at 108-09.) Ellis testified that Pauser stated that Hachmeister was small and not much of a fighter and that Ellis or Greene could beat him up. (Respt.'s Br. Ex. S at 311.) Ellis also testified that Pauser stated that Hachmeister would hand over his property if he saw a knife. (Respt.'s Br. Ex. S at 296.) In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution and upholds the verdict if any rational trier of fact could find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because the jury could credit evidence that Pauser knew that the robbery involved a large hunting knife and the possibility of force, a rational jury could have determined that a reasonable person in Pauser's position would have known that first-degree intentional homicide was a likely result, not an extraordinary or surprising result, of the armed robbery. *See*

*Balistreri*, 317 N.W.2d at 501-03; *Asfoor*, 249 N.W.2d at 537-38; *Cydzik*, 211 N.W.2d at 429-30; *see also Perry*, 308 F.3d at 696 (Posner, J., dissenting).

Pauser argues that she was not aware that Greene had "extremely violent tendencies" and that she could not have expected Greene "to pointlessly stab Hachmeister to death." (Petr.'s Br. 28.) The court believes that the act of robbing someone is evidence of a violent tendency. More importantly, a rational jury considering the circumstances in this case could find that first-degree intentional homicide was a likely result of armed robbery absent any evidence of the co-conspirator's violent tendencies. Pauser argues that stabbing Hachmeister was "pointless," but a reasonable person in Pauser's position would realize that Hachmeister may have been in his bedroom at the time of the robbery, may have woken during the robbery, and may have made noise loud enough for other persons in the house to hear. Pauser knew that Greene had a knife and was prepared to use force. A rational juror could have found that first-degree intentional homicide is a natural and probable consequence of armed robbery in this case.

Third, the petitioner argues that the trial court erred by excluding a defense witness for what it concluded was a discovery violation. The petitioner argues that her right to present a defense was violated.

The Wisconsin Court of Appeals did not consider whether excluding the witness was proper; rather, the court determined that any error was harmless because "[t]here was extensive evidence that Pauser actively participated in

planning and carrying out the robbery and committed several specific acts in furtherance of the conspiracy." *State of Wisconsin v. Pauser*, 680 N.W.2d 832, ¶ 9.

Courts apply a harmless error analysis to claims that witnesses were improperly excluded at trial. *See Tyson v. Trigg*, 50 F.3d 436, 446-47 (7th Cir. 1995). The state court correctly articulates the harmless error standard. Although the state court cited to *State v. Harvey*, 647 N.W.2d 189, 201-03 (Wis. 2002), *Harvey* applies the same standard as *Chapman v. California*, 386 U.S. 18, 24 (1967): the beneficiary of the error must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.*; *see Harvey*, 647 N.W.2d at 202-03 (holding that an error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."). This court must determine whether the court unreasonably applied *Chapman* or reached a decision contrary to it. *See Aleman v. Sternes*, 320 F.3d 687, 689-90 (7th Cir. 2003). Even if the state court did unreasonably apply *Chapman*, this court may still deny habeas relief if the resulting error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Aleman*, 320 F.3d at 689-90. In applying the *Brecht* standard, a federal court generally should not find a harmless error on collateral review without reviewing the whole record. *Brecht*, 507 U.S. at 640-41 (Stevens, J., concurring); *Jenkins v. Nelson*, 157 F.3d 485, 495 (7th Cir. 1998).

The Wisconsin Court of Appeals' harmless error analysis is not an unreasonable application of *Chapman*. Pauser's proposed witness would have testified that Kopp, not Pauser, called the victim on the day before the robbery. This testimony would have contradicted the testimony of two of the State's witnesses, Chad Rowin and Steve Anderson, who testified that Pauser called Hachmeister. The trial court recognized that the testimony of the proposed witness would have been exculpatory because it refutes the State's theory that it was Pauser who was trying to set up a marijuana deal with the victim in order to get him to a location where co-actors could rob him. (Respt.'s Br. Ex. M at 162.)

Even if the jury credited the testimony of Pauser's proposed witness and believed that there was one telephone call that Kopp placed on the day before Hachmeister was killed, the state court correctly determined that there is extensive evidence, other than the one phone call, that Pauser aided and abetted the commission of armed robbery. Kopp testified that Pauser suggested Hachmeister as a robbery target. (Respt.'s Br. Ex. S at 60-61.) Ellis testified to the same. (*Id.* at 291.) Kopp testified that Pauser, Kopp, Ellis and Greene discussed using force against Hachmeister. (*Id.* at 108-09.) Ellis testified that Pauser stated that Hachmeister was small and not much of a fighter and that Ellis or Greene could beat him up. (*Id.* at 311.) Ellis testified that Pauser stated that Hachmeister would hand over his property if he saw a knife. (*Id.* at 296.) Kopp testified that Pauser drove Kopp, Ellis and Greene by Hachmeister's house to show Ellis and Greene the location of the house and Hachmeister's bedroom. (*Id.* at 70.) Ellis testified to the

same. (*Id.* at 301.) Kopp testified that Pauser made several telephone calls, including calls to Hachmeister's home, to locate Hachmeister on the night that he was killed. (*Id.* at 89, 93-94.) Ellis testified to the same. (*Id.* at 328, 330, 336; Respt.'s Br. Ex. L at 56-57.) Hachmeister's mother, Lorraine Randall, testified that Pauser came to Hachmeister's home looking for Hachmeister on the day before he was robbed. (Respt.'s Br. Ex. K 165-66.) Randall testified that Pauser called Hachmeister's home looking for Hachmeister after 10:00 p.m. on the night that he was killed. (*Id.* at 171-72.) Kopp testified that Pauser drove Kopp, Ellis and Greene to Hachmeister's home on the night that he was killed. (Respt.'s Br. Ex. S at 103-04.) Ellis testified to the same. (*Id.* at 327.) Ellis testified that Pauser was participating in the plans to rob Hachmeister in his home and did not back out of the plan. (*Id.* at 344-45.) Kopp testified that Pauser was in the car when Greene returned from Hachmeister's home with a bloody knife and when Greene stated that he stabbed Hachmeister seven times. (*Id.* at 184.) Ellis testified to the same. (Respt.'s Br. Ex. L at 10-12.) Kopp testified that Pauser drove Kopp, Ellis and Greene away from Hachmeister's home after the robbery. (Respt.'s Br. Ex. S at 115.) Kopp testified that Pauser looked at the items in Hachmeister's stolen backpack on the night of the robbery. (*Id.* at 121-22.) Kopp testified that Pauser smoked marijuana from Hachmeister's pipe. (*Id.* at 189.) Ellis testified to the same. (Respt.'s Br. Ex. L at 21.) Pauser placed several telephone calls to her mother and father from the Dane County Jail, and a transcript of those conversations was entered into evidence as Exhibit 129. (Respt.'s Br. Ex. M at 196-99.) In one

conversation, she states, "Somebody is snitching out the four of us." (*Id.* at 202.) In another conversation, she states, "[N]ow I find out if I tell the truth, I'm facing fifteen years . . . I have to lie." (*Id.* at 203.) In another conversation, she states, "I was driving." (*Id.* at 203.) In another conversation, she states, "I am sorry I was involved." (*Id.* at 204.) A police officer also testified that Pauser stated that Hachmeister had been stabbed seven times before that information had been released to the general public. (*Id.* at 213-15.)

Despite the extensive evidence of Pauser's participation in the robbery, Pauser argues that the excluded testimony concerning the one phone call would have affected the credibility of Ellis and Kopp and all of their testimony. (Petr.'s Br. 32.) Pauser wildly exaggerates the value of the excluded testimony. Even if Kopp made one telephone call to Hachmeister, Ellis and Kopp testified that Pauser also called Hachmeister's home in an attempt to locate him, and their testimony is corroborated by Hachmeister's mother. Even if the court were to ignore the testimony of Ellis and Kopp in its entirety, the excluded testimony could not undermine Pauser's incriminating statements made from the Dane County Jail and the police officer's testimony that Pauser knew that Hachmeister was stabbed seven times before that information was released to the public.

Based upon all of the evidence of Pauser's planning and participation in the robbery, the court's harmless error analysis was not an unreasonable application of clearly established federal law. In any event, this court has reviewed the whole record and determines that the resulting error did not have a "substantial and

injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this   27th   day of June, 2006.

BY THE COURT:

  s/ J. P. Stadtmueller  
J. P. Stadtmueller  
U.S. District Judge